132

Stratford Arms, Inc. *v.* Zoning Board of
Adjustment (et al., Appellant).

Argued November 24, 1967. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellant.

*Irvin Stander,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 15, 1968:

In this case the Zoning Board of Adjustment of the City of Philadelphia (Board) refused to grant requested variances from setback and off-street parking requirements of the city's zoning code. The Court of Common Pleas reversed the Board. We granted certiorari under Rule 68½, following which the city filed this appeal.

The background of the case is as follows:

Stratford Arms, Inc. (a Penna. Corp.), the appellee, on November 6, 1961, entered into an agreement to purchase the premises located at 4015-4017 Blakiston Street, Philadelphia, contemplating the erection of multiple-story family dwellings thereon. The agreement of sale erroneously described the land as having a depth of 250 feet. Subsequently the agreement was consummated and on March 13, 1962, a deed vesting

title in the appellee was recorded. The deed correctly described the land as having a depth of 240 feet.

On March 1, 1962, the appellee applied to the city's Department of Licenses and Inspections for zoning and use registration permits, as well as for building permits for the construction of two twenty-two family apartment buildings with off-street parking. Accompanying this application was a plot plan for the site, showing a land depth of 250 feet with a proposed building setback of 15 feet and a proposed off-street parking area of 11,000 square feet. Under the plan, each building was to measure 158 feet in length and 32 feet 9 inches in width. Under the provisions of the Zoning Code of April 15, 1959, then applicable, the premises was zoned "C" Residential and a setback of 8 feet and a parking area of 11,000 square feet were required. Since the submitted plan met all "C" Residential District requirements, the requested permits were issued on March 12, 1962.

Construction was completed in September 1962. As constructed, each building measures 160 feet in length and 33 feet 6 inches in width with a setback from the street line of only 3 feet 6 inches. The off-street parking area is only 10,394 square feet.

On April 3, 1963, appellee applied for a permit for the purpose of legalizing the zoning status of the two buildings. The permit was refused. An application was then filed with the Board for a variance. After an extensive hearing, the requested variance was likewise refused. The court of common pleas granted certiorari and subsequently remanded the record to the Board for the taking of additional testimony. A further hearing ensued, after which the Board again refused the variance. The common pleas court then reversed the Board's decision without taking any further testimony.

The Board's refusal of the requested variance was based on its conclusion that the appellee constructed the buildings involved "in total and wilfull disregard of the provision of the zoning ordinance" and "wilfully and deliberately filed false plans with the Permit Issuance section for which it could receive permits without first coming before the Zoning Board of Adjustment for variances." It also found that the property could be used for residential purposes within the framework of the zoning regulations and that if any hardship existed it was self-inflicted. In reversing, the lower court concluded that the above findings and conclusions were not supported by the evidence and, therefore, ruled that the Board committed an abuse of discretion.

The law is clear that the burden of justifying the right to a variance is on him who seeks it, *Lovering v. Zoning Board of Adjustment*, 406 Pa. 339, 178 A. 2d 740 (1962). Also, in order to establish a right to a variance, an applicant must prove: "(1) unnecessary hardship upon and which is unique or peculiar to the applicant's property, as distinguished from the hardship arising from the impact of the Zoning Act or regulations on the entire district; and (2) that the proposed variance is not contrary to the public safety, health, morals or general welfare." *Joseph B. Simon & Co. v. Zoning Board of Adjustment*, 403 Pa. 176, 178, 168 A. 2d 317, 318 (1961). And, assuming that such a unique or peculiar hardship exists, a variance is properly refused where the hardship results from the applicant's own willful violation of the zoning regulations. *Moyerman v. Glanzberg*, 391 Pa. 387, 138 A. 2d 681 (1958); cf. *Application of Julian*, 53 Del. 175, 167 A. 2d 21 (Superior Ct. 1960).

Under the circumstances, our review is limited to the determination of whether or not the Board, in re-

fusing the variance, committed an error of law or was guilty of a manifest abuse of discretion: *Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 227 A. 2d 824 (1967) ; *Brennen v. Zoning Board of Adjustment*, 409 Pa. 376, 187 A. 2d 180 (1963). Our examination of the record convinces us that the Board's action was not improper in either respect.

At the hearing before the Board, appellee's counsel explained that the description of the land in the agreement of sale, giving its depth as 250 feet, was copied from the grantor's deed and old surveys of the property. He submitted that the plans pursuant to which the permits were granted were based on this erroneous description and led to an unintentional noncompliance with the zoning requirements. While this statement is plausible and uncontradicted, in view of other facts in the record we are not persuaded that the Board erred in rejecting appellee's claim that an honest mistake occurred. The correct depth of the land involved was ascertained at least as early as March 13, 1962, the date the deed of conveyance was recorded. Despite this knowledge, gained before construction began, there is nothing in the record to indicate that any effort was made to correct the plans or to notify the proper authorities of the initial mistake. The closeness of the construction to the street line, especially when compared with the setback of neighboring buildings, was obvious and should have been significant to the officers of appellee, who are experienced builders. Also, the setback after construction was completed differed substantially from that shown on the plans submitted to secure the necessary permits. In view of all these facts, we fail to find any abuse of discretion on the part of the Board in concluding that a willful violation of the zoning regulations occurred.

In its brief appellee suggests that the city "should be estopped" from now asserting the violations involved because the city's building inspection staff in the discharge of its duty "presumably made inspections, at every stage of construction" and failed to report any violations of the code. There is nothing in the record to support this allegation. Furthermore, reliance on the word of a mere ministerial officer cannot justify a variance. *Kovacs v. Ross Twp. Board of Adjustment*, 173 Pa. Superior Ct. 66, 95 A. 2d 350 (1953). Also, this argument, based on the premise that the city should have known of the violations as the construction progressed, is inconsistent with appellee's insistence that it had no reason to be aware of the violations. Moreover, innocent reliance is an essential element of equitable estoppel. See 28 Am. Jur. 2d Estoppel and Waiver §§79-80 (1966) ; 14 P.L.E. Estoppel §26 (1959). Appellee's conduct fails to indicate any such innocent reliance.

Finally, appellee argues that a "tear down" order would be unconscionably severe and asserts facts which may justify this conclusion. However, the propriety of such an order and the question of what should be done to enforce the ordinance as to the property involved is not now before us.

Order reversed.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent, and would affirm the Order of the lower Court. I agree with the Majority's statement of the applicable legal principles, but I disagree with its conclusions.