John L. Esterhai, William Snyder, Clinton S.
Seltzer and Clarence Maiden *v.* Zoning
Board of Adjustment.

Argued October 7, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*Austin M. Lee,* for appellants.

*Carl K. Zucker,* Deputy City Solicitor, with him *Thomas A. Matthews,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* First Deputy City Solicitor, *Levy Anderson,* City Solicitor, for appellee, the City of Philadelphia.

*Daniel Sherman,* for appellee, Joseph A. Charles.

OPINION BY JUDGE BARBIERI, February 22, 1971:

This zoning case is before us by transfer order of the Supreme Court entered on September 14, 1970 pursuant to the authorization in Section 507 of the Appellate Court Jurisdiction Act of 1970. Act of July 31, 1970, P. L.     (Act No. 223—1970), effective September 11, 1970.

The appeal is from an order by the Philadelphia Common Pleas Court which purports to affirm the grant of a variance by the Zoning Board of Adjustment

of Philadelphia, but also remands the matter with instructions to "take testimony in accordance with the tenor of this opinion so that the quiet enjoyment of the citizens living in the residential properties . . . [in the neighborhood] . . . will not be adversely affected." This order was entered on November 12, 1969 after argument before the lower court without the taking of testimony.

After this appeal was taken, an additional "OPINION" was filed by the lower court judge on January 7, 1970, wherein he asserts ". . . that in my judgment the Zoning Board of Adjustment did not act capriciously and did not commit an error of law. However, I thought it inherent in the power of this Court to afford better protection to the residents and property owners adjacent to the proposed car lot . . . and for that reason added the protective features as set forth in my order of remand to the Zoning Board of Adjustment."

The "features" referred to will be dealt with later in this opinion.

The variance granted was to use the premises in question as a used car lot. The specific area which would be freed from the zoning restriction by the variance is part of a larger property owned for many years by the applicant, Joseph A. Charles, and referred to in the proceedings as "Premises 8300 Ridge Avenue". This property has been "split-zoned" throughout the period of Charles' ownership, one part C-2 Commercial and the other part, involved here, R-5 Residential. The R-5 Residential District in Philadelphia limits the land use to single family dwellings, subject to certain qualifications imposed in the Code. *The Philadelphia Code,* Zoning and Planning, §14-206. The entire land area is more than two acres, approximating 100,000 square feet, with three street frontages: 360 feet along Ridge Avenue, 248 feet on Port Royal, and 344 feet on Harner

Street. The fourth side runs 341 feet along the rear lots of residential properties which front on Ivin's Road.

In 1947, Charles built on the C-2 Commercial area of his property a one-story cinder block structure, 60' x 100', in which he originally conducted a rug cleaning business. In 1952, he added a second similar type building, 50' x 145', used for the retail sale of clothing. Approximately one-half of the latter structure is in the R-5 Residential area of the applicant's property. The zoning history reveals that in 1961 the Board authorized use for rug cleaning, retail clothing store and private parking lot. In 1965, when the 1961 uses had been discontinued, the Board granted use for retail sales of automobiles in an enclosed building and accessory parking. This grant of variance was appealed and an order by Judge REIMEL for the Philadelphia Common Pleas Court was entered on June 1, 1966, affirming the grant of the variance, but with the proviso ". . . that accessory parking does not include outdoor display nor the storage or the sale of vehicles to the public. . . ." In 1967, the Board refused an application for use of the premises as a used car lot and the washing of cars indoors and outdoors by hand.

In 1968, the application which initiated the present proceedings was filed and brought before the Board to permit use "for retail sale of autos in an enclosed building, accessory parking and *retail sales of autos on an open lot*. . . ." (Emphasis added) After a hearing on September 17, 1968, the Board made a determination that the applicant had ". . . presented full and complete testimony to meet the criteria for the grant of a variance . . . subject to the following proviso: . . . Provide evergreen screen planting along entire north property line." This action by the Zoning Board, before the court below, is now before us.

Appellants contend here, as they did before the lower court, that the proviso of Judge REIMEL in affirming the 1965 variance imposed a *res judicata* restriction on the power of the Board when acting on the new application in 1968. Appellants also argue that the Board's action was an abuse of its discretion, an issue which our disposition of this case makes it unnecessary to reach. We think another question exists, the interlocutory nature of the lower court's decision, which we will consider first.

## I. The Interlocutory Nature of the Lower Court's Order.

Not raised as an issue in briefs or argument is the fact that we are dealing here with an appeal from a remand order by the lower court, the interlocutory nature of which is obvious.

While ordinarily an appellate court will not consider issues which are not raised by the parties or which appear to be of no interest to them, we feel impelled to deal with the interlocutory character of the order which we are asked by appellants to reverse and by appellee to affirm. When appellee, Joseph A. Charles, asks us to affirm, he is asking us to approve a remand which leaves unresolved the use that he may make of his lot. He is asking us to approve the new hearing ordered below and at the same time asking us to affirm the variance to permit sales of used cars on the lot. But the taking of new testimony may result in an entirely different kind of variance than the one granted by the Board. Such a new one could be so burdened with additional restrictions that use of the premises as a used car lot would be impractical, uneconomical or even impossible. In such case, should the Board, the owner, or the neighbors, be burdened

with the Board's present adjudication of a variance for what has become an unacceptable use, or should all parties be free to consider what is best in the light of the entire record as it is constituted after the further hearing? In our view, remands such as the one in this case, should be unfettered by partial adjudication on the merits. Perhaps after taking further testimony, the Board, if not limited by appellate adjudication, would see fit to modify its present position and deny the use as a used car lot. There are many less restricted residential uses.[1] The R-5 Residential District is high up in the list of twenty-three residential districts provided in The Philadelphia Code. And there are many commercial uses other than the one applied for in this case, some of which certainly could be more acceptable to residents in the area. Indeed, the used car lot use granted here would fall into what is presently the "C-7" Commercial District category. *The Philadelphia Code*, Zoning and Planning, §14-306.2. As a result, the Board's order has moved the authorized use from a high residential one to the lowest of the numbered commercial districts, a drop in status of twenty-three districts.

On unrestricted remand, the owner could either consider another use, if denied the use requested by him, or he could appeal to a lower court which would, in turn, have broad review and remand powers.[2] Furthermore, it could well be that additional restrictions imposed by the Board upon the variance might make the

---

[1] Counsel for the opponents to the application suggests a change to apartment house use. (49a)

[2] See *The Philadelphia Code*, Zoning and Planning, §14-1806(4). See also *Upper St. Clair Township Appeal*, 408 Pa. 416, 184 A. 2d 263 (1962) ; *Rogalski v. Upper Chichester Twp.*, 406 Pa. 550, 178 A. 2d 712 (1962) ; *Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A. 2d 280 (1958) ; *54th St. Center, Inc. v. Zoning Bd. of Adj.*, 395 Pa. 338, 342, 150 A. 2d 335 (1959).

use of the premises as a used car lot satisfactory to appellants, causing them to withdraw their objections. It is evident, therefore, that unless we can wholly affirm the Board, or wholly deny its power to grant a variance in this case, in disregard of the lower court's remand, it would at least be more just and equitable for us to confine our interlocutory consideration to the validity of the remand.[3]

In considering the terms, or what the lower court calls "the features", of the remand in the light of the record made before the Board, we note that the lower court remanded the record to take testimony in connection with the court's opinion "that further limitation should be imposed upon the use of this property as an auto sales lot in at least the following matters: [1] ... hours of operation ... [2] ... the proposed lighting to be installed ... [3] ... the testing of automobiles to be sold ... [4] ... the prohibition of any repairing on the premises and so forth."

Reference to the record reveals that the testimony of the owner contains statements by him of his intentions with regard to all except the first of the above four items noted in the remand.[4]

No testimony was taken as to hours of operation, and except for two findings that testing would be solely on the applicant's property and not on adjacent streets, there is nothing in the Board's adjudication or in the terms of the variance grant to indicate that it expected Charles to live up to his assertions of intent; no conditions that he do so were imposed; nor is there any indication that his representations, other than the findings on testing, were of interest or importance to

---

[3] In this connection, we note that the appellee, Charles, has not appealed or otherwise questioned the terms of the remand.

[4] As to proposed lighting, at 27a; as to testing, at 29a and 31a; and as to repairing, at 22a and 29a.

the Board in making the grant of a variance. Statements of intent by the applicant, although made under oath on the record, are not binding upon him.[5]

When we consider that many residential property owners in the area have invested substantially in the single dwelling and other high quality homes of the type depicted in the record, we can readily understand the lower court's remand. If most of the questions to be considered on the remand were deemed important enough to be brought up in the testimony before the Board, obviously because of the importance of such subjects to neighboring residents, we are at a loss to explain why most of the items were not even noted in the Board's findings or in its conclusions. Distrust of the applicant by his neighbors in this case seems justified. Certain testimony and statements of counsel at the hearing before the Board, not denied by the applicant, were that he had been acting in violation of limitations put on his use by a prior Zoning Board order. We will affirm the remand, but insofar as the lower court's opinions of November 12, 1969 and January 7, 1970 may purport to affirm or otherwise pass upon the validity of the variance grant on the merits, the language therein is disapproved.

In thus treating the lower court's remand as an interlocutory order, we are aware that this case is in some aspects similar to *Lovering v. Zoning Bd. of Adj.*, 406 Pa. 339, 178 A. 2d 740 (1962), in which the Supreme Court decided to consider the merits of an appeal from a remand, although a motion to quash the appeal was filed on the ground that the order of the lower court was interlocutory. Mr. Chief Justice BELL stated: "Appellee moves to quash the appeal because the Order of the lower court is interlocutory. While

---

[5] See R. Ryan, Pennsylvania Zoning Law and Practice, §9.4.18 (1970).

the question is a close one, we have decided not to quash. Those parts of the Order of which appellants complain are final: Myers v. Travelers Ins. Co., 353 Pa. 523, 46 A. 2d 224. In Myers v. Travelers Ins. Co., the Court made absolute a rule by defendant to stay proceedings until plaintiff permitted a physical examination of himself to be made. Plaintiff appealed from this order; defendant filed a motion to quash the appeal on the ground that the order was interlocutory; the Court held that the order was final and dismissed the motion to quash the appeal. The Court said (p. 525): 'Unless an appeal from an interlocutory order is allowed by statute, *a decree to be final and appealable must preclude the complaining party from further action in the court making such decree*: see Keasbey's Trust Estate, 342 Pa. 439, 20 A. 2d 281; Washington Trust Company Account, 350 Pa. 363, 366, 39 A. 2d 137, and cases therein cited. The effect of making the rule absolute was to preclude plaintiff from further action.' " 406 Pa. at 341-342. (Emphasis added)

The instant case is distinguishable from *Lovering* for two reasons. First, the appellants here are not precluded from further action in the court ordering the remand. After the Zoning Board has made its decision, they may again appeal to the common pleas court. Secondly, the case before us does not fit within the language of *Lovering,* because in our case there are no separate "parts" of the order which can be considered final. In *Lovering,* the lower court remanded on the request for a certificate for accessory parking. This request was separate from the applications for permission to build and operate the nursing home and for a variance from the minimum set back and rear yard requirements. In our case, the lower court remanded for conditions to be added to the variance. But as we have discussed above, the variance and the conditions to be

attached are really part and parcel of the same issue—whether and under what circumstances a used car lot can be operated at 8300 Ridge Avenue in Philadelphia.

## II. The Res Judicata Question.

There remains the *res judicata* question raised by appellants before the Zoning Board, before the lower court, and before this Court. Appellants point to the decision of Judge REIMEL, a Common Pleas Court judge, in connection with the prior grant of a variance to this owner on January 11, 1965, for "retail sales of autos in an enclosed building and accessory parking . . .". The Board's fourth finding in the instant case reads: "4. That an appeal was taken to Common Pleas Court in the matter relating to the grant of a variance under Calendar No. X-2042 and President Judge REIMEL, on June 1, 1966, handed down the following decision: 'Decision of Zoning Board of Adjustment affirmed provided that accessory parking does not include outdoor display nor the storage or the sale of vehicles to the public; appeal dismissed. REIMEL, P. J.' "

Appellants interpret this apparent definition of "accessory parking" to be a prior adjudication which should now deprive the Board of the discretion to allow the outdoor "sale of vehicles to the public." They point to this applicant's zoning record of applications and re-applications and argue that an owner at some point should be barred from continuing to apply for uses that have been formally denied him; that the residents who must protest in order to protect the character of their residential neighborhoods are entitled to have some relief from the expense and effort involved in such repetitious contests; that, therefore, unless some substan-

tial change in the scene occurs, the doctrine of *res judicata* should apply.[6]

Counsel for the Zoning Board contends that the doctrine of *res judicata* cannot apply to zoning cases, because "neighborhoods change rapidly; therefore, the facts of the successive requests for a variance are never the same". Counsel for the owner, in also opposing the application of the *res judicata* doctrine, contends that Judge REIMEL's order did not adjudicate the issues involved here because it had to do only with "parking" and not with "selling"; that, in any event, *res judicata* is not applicable or is only of one year's duration in Philadelphia because of the Board's rule allowing annual re-applications.[7]

In the recent case of *Filanowski et al. v. Zoning Board of Adjustment,* 439 Pa. 360, 266 A. 2d 670 (1970), our Supreme Court commented briefly on the doctrine of *res judicata* in zoning cases, stating: "An order of a court affirming a decision by a Zoning Board refusing a variance does not preclude a subsequent grant of a variance for the same land if there has been a *subsequent substantial change in conditions incident to the land itself.* J. B. Simon & Co. v. Zoning Board of Adjustment, 403 Pa. 176, 168 A. 2d 317 (1961); Crawford Zoning Case, 358 Pa. 636, 57 A. 2d 862 (1948)." 439 Pa. at 363. (Emphasis added).

---

[6] The burden of contests upon area property owners caused by repeated applications is noted in the record. (16a, 37a, 43a).

[7] "10. Except by special permission of the Board, no rehearing will be permitted, after a final determination by the Board, or by a Court on appeal therefrom, for one (1) year from the date of such final determination. In addition, no rehearing will be permitted, after a final determination by the Board, or by a Court on appeal therefrom, until the premises in question have been brought into compliance and remained in compliance with that final determination for at least one (1) year." *Regulations Governing Practice Before the Zoning Board of Adjustment of the City of Philadelphia,* §10.

In view of the fact that the Supreme Court in *Fila-nowski* was commenting on the doctrine of *res judicata* in a case that also arose under the Philadelphia Code, we conclude that the doctrine of *res judicata* is not excluded from consideration in Philadelphia cases and that its use is unaffected by the Board's rule. This rule, as we read it, precludes *any* reapplication within the year period (except on special leave). We view this as a limitation on all reapplications, including not only those where circumstances have not changed, but also those cases where "subsequent substantial change" has taken place. We take it that the rule represents the Philadelphia Board's device to hold down its heavy case load rather than to preclude application of the doctrine of *res judicata*. See R. Ryan, *Pennsylvania Zoning Law and Practice*, §9.4.17 (1970).

While we do not now decide whether *res judicata* qualities can be attributed to Judge Reimel's proviso in his 1965 order, it would be in order on the remand for the Board to resolve the factual part of the question by an appropriate finding on competent evidence as to whether subsequent to Judge Reimel's order there have been substantial changes in "conditions incident to the land itself".[8] 439 Pa. at 363.

Accordingly, this case is remanded to the Zoning Board of Adjustment of Philadelphia for such proceedings as are consistent with this opinion.

The foregoing opinion was prepared by Judge (now Justice) ALEXANDER F. BARBIERI before his resignation

---

[8] In this connection, our examination disclosed two items appearing in the record: (1) that a commercial use application "across the street" was recently before the Board with no protestant (47a) ; and (2) the Board's 15th finding "That the property which is the subject of this application is on the Comprehensive Plan for commercial usage." See also testimony at 50a, and *The Philadelphia Code*, Zoning and Planning, §14-1803(1)(h).

as a judge of the Commonwealth Court. It is hereby adopted as the opinion of the Court.

---

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent from the majority holding because it in effect reverses the granting of a variance by the Philadelphia Zoning Board of Adjustment without finding any abuse of discretion or error of law in the proceedings.

The Zoning Board of Adjustment, upon proper application, granted a variance to the applicant. The grant of the variance was appealed to the Court of Common Pleas and the court specifically found that the Board of Adjustment had not acted capriciously and had not committed an error of law. The order of the court below was appealed to this court and again, this court in effect reverses the grant of the variance, even though there is no abuse of discretion or error of law pointed out by the majority opinion. I find it difficult to understand how the grant of a variance by a Zoning Board of Adjustment can end up being set aside when the first judicial review in the court below specifically states that there was no error of law or capricious action and the appellate court also fails to find any abuse of discretion or error of law.

The problem has arisen because the court below entered two (2) "opinions". On November 12, 1969, Judge GOLD entered an order. The order reads as follows:

"The authorities state clearly that the courts on certiorari from the Zoning Board of Adjustment are not to act as statesmen. Our authority is limited to the determination of whether the Zoning Board of Adjustment acted capriciously or committed an error of law.

Despite these two concepts, we think we have authority to afford better protection to the residents and property owners adjacent to the proposed used car lot

at premises 8300 Ridge Avenue, Philadelphia. We have reviewed the record thoroughly and in our opinion the Zoning Board of Adjustment has not fully protected the adjacent property owners by providing for evergreen screen planting along the entire north property line. We think that further limitation should be imposed upon the use of this property as an auto sales lot in at least the following matters: hours of operation, the proposed lighting to be installed, the testing of automobiles to be sold, the prohibition of any repairing on the premises and so forth.

We therefore, remand this matter to the Zoning Board of Adjustment to take testimony in accordance with the tenor of this opinion so that the quiet enjoinment of the citizens living in the residential properties on Harner Street, Ridge Avenue, Sunset Avenue, Summit Street, Lare Street, Crestview Road, Ivins Road and Penrose Street will not be adversely affected."

On January 7, 1970, Judge GOLD entered the following opinion interpreting his order of November 12, 1969.

"Since this case has been appealed, I wish to make it perfectly clear that in my judgment the Zoning Board of Adjustment did not act capriciously and did not commit an error of law. However, I thought it inherent in the power of this Court to afford better protection to the residents and property owners adjacent to the proposed car lot at premises 8300 Ridge Avenue, Philadelphia, Pennsylvania and for that reason added the protective features as set forth in my order of remand to the Zoning Board of Adjustment." Judge GOLD specifically states that he did not find any error of law, nor did he find that the Zoning Board of Adjustment acted capriciously. This being so, Judge GOLD did not have legal authority to remand the Board's grant of a variance.

On appeal to this Court, both parties treated the two opinions of the court below, one dated November 12, 1969, and the other dated January 7, 1970, as constituting a final order by the court below which in effect upheld the grant of the variance by the Zoning Board of Adjustment. I do not think that the two opinions read together can permit any other conclusion.

Those portions of Judge GOLD's opinions, particularly the first opinion of November 12, 1969, which speak of "remanding" the matter to the Board of Adjustment because Judge GOLD thought additional conditions could be imposed upon the grant of the variance, were outside the legal authority of the court below. The court is not a Board of Adjustment. If the variance were properly granted, as Judge GOLD states, it was for the Zoning Board to determine what conditions were necessary for the protection of the neighborhood. The Board did have the authority to impose conditions. It is clear from the record that the Board realized this authority and did consider the matter of conditions. Some conditions were imposed and others refused by the Board. In such a situation a court, unless it points to an error of law or abuse of discretion, cannot place itself in the shoes of the Board of Adjustment and indicate that the court would have done otherwise. Many times courts would have handled and decided a matter in its original posture contrary to the manner in which it was handled and decided by the administrative agency. But this court cannot substitute its judgment for the Board's judgment unless it points to an abuse of discretion or error of law. The lower court's authority to "modify" a decision of the zoning board is not carte blanche authority to substitute its judgment for that of the board. There must ge a legal basis for any modification of the board's decision.

Judge GOLD did not find by his own statement in the opinion of January 7, 1970, any capricious action or error of law. Because of this Judge GOLD's opinion must be interpreted as a final order upholding the variance. This is exactly how both parties to this appeal treated the two opinions of Judge GOLD.

Compounding the error, this court reverses the grant of the variance by the Zoning Board without pointing to any error of law or abuse of discretion by the Zoning Board. I do not think this court has such a power. Once a Zoning Board has granted a variance, neither the court below nor an appellate court can take action which in effect nullifies the grant of the variance, unless an abuse of discretion or an error of law is present. Neither the court below nor this court has pointed to any abuse of discretion or error of law by the Board of Adjustment. Without such a finding, the Board's grant of the variance permit should not be disturbed.